UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 DEC 23  AM 10: 16

| | |
|---|---|
| THE STATE OF FLORIDA<br>By Attorney General Pamela Jo Bondi<br><br>THE STATE OF MARYLAND<br>By Attorney General Douglas F. Ganster<br><br>THE STATE OF MISSOURI<br>By the Attorney General Christ Koster<br><br>THE STATE OF NORTH CAROLINA<br>By Attorney General Roy Cooper<br><br>THE COMMONWEALTH OF<br> PENNSYLVANIA<br>By Attorney General Kathleen Kane<br><br>THE STATE OF TENNESSEE<br>By Attorney General Robert E. Cooper, Jr. and<br><br>THE STATE OF TEXAS<br>By Attorney General Greg Abbott<br><br>               Plaintiffs,<br><br>vs.<br><br>SERVICE CORPORATION INTERNATIONAL<br><br>and<br><br>STEWART ENTERPRISES, INC.<br><br>               Defendants. | A13CV1082 LY |

## COMPLAINT

The States of Florida, Maryland, Missouri, North Carolina, Tennessee, and Texas and the Commonwealth of Pennsylvania, by and through their Attorneys General, ("Plaintiff States") for their complaint herein allege:

## I. NATURE OF THE COMPLAINT

1. Plaintiff States bring this civil antitrust action to challenge the merger of the two largest providers of funeral services and associated products and cemetery services and associated products and property. Plaintiff States allege that the proposed acquisition of Stewart Enterprises, Inc. ("Stewart") by Service Corporation International ("SCI") would substantially lessen competition in numerous markets in violation of Section 7 of the Clayton Act, 15 U.S.C § 18 and in violation of Plaintiff States' applicable state laws.

2. Plaintiff States seek permanent injunctive relief to prevent, restrain and/or remedy the adverse effects on competition and consequent harm to the public interest that would result from SCI's acquisition of Stewart.

## II.   PARTIES, JURISDICTION AND VENUE

3. Each Plaintiff State is a sovereign state of the United States. This action is filed on behalf of the Plaintiff States by their respective Attorneys General, each of whom is accorded the requisite authority under Section 16 of the Clayton Act, 15 U.S.C. § 26. This authority is buttressed by equitable and common law power vested in the Attorney General and other powers conferred by state law.

4. Defendant SCI is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Texas, with its corporate office and principal place of business located at 1929 Allen Parkway, Houston, Texas 77019. SCI, among other things, is engaged in the sale and provision of (a) funeral services and associated products, and (b) cemetery services and associated products and property.

5. SCI owns and operates more than 1,449 funeral-service locations and 374 cemeteries (including 213 combined funeral service/cemetery locations), and 100 crematories in

44 states, including the Plaintiff States and the District of Columbia. SCI's 2012 revenue from all operations totaled approximately $2.41 billion.

6. SCI is, and at all relevant times has been, engaged in "commerce" as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12.

7. Defendant Stewart is a corporation organized, existing, and doing business under and by virtue of the laws of State of Louisiana, with its corporate office and principal place of business located at 1333 South Clearview Parkway, Jefferson, Louisiana 70121. Stewart, among other things, is engaged in the sale and provision of (a) funeral services and associated products, and (b) cemetery services and associated products and property.

8. Stewart owns and operates 217 funeral homes and 141 cemeteries in 24 states, including the Plaintiff States, and Puerto Rico. For the 12 months ending October 31, 2013, Stewart's total revenues were approximately $524.1 million.

9. Stewart is, and at all relevant times has been, engaged in "commerce" as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12.

### III. THE TRANSACTION

10. On May 29, 2013, SCI and Stewart executed an Agreement and Plan of Merger ("the Agreement") pursuant to which SCI will acquire Stewart in a transaction valued at approximately $1.4 billion ("Merger").

11. The Merger would combine the first and second largest funeral and cemetery service providers in North America. SCI and Stewart offer competing funeral and cemetery services in 98 metropolitan statistical areas ("MSAs") located in 16 states, including the Plaintiff States. These competing service markets include 29 funeral services markets and 30 cemetery

3

services markets where the Merger, if consummated, likely would substantially lessen competition.

## IV.  THE RELEVANT PRODUCT MARKETS

### A.  Funeral Services and Associated Products

12. The provision and sale of funeral services and associated products ("funeral services") constitutes a relevant product market in which to analyze the competitive effects of the Merger. Funeral services include all activities relating to the promotion, marketing, sale, and provision of funeral services and goods, including, but not limited to, goods and services used to remove, care for, and prepare bodies for burial; and goods and services used to arrange, supervise, or conduct the funeral ceremony. Funeral services do not include cremation services because consumers do not substitute cremation services for funeral services based on price, and the competitive conditions for cremation services are substantially different than for funeral services. Since consumers primarily choose their final disposition based on their personal or religious views, consumers generally do not view cremation services as viable substitution for funeral services. Thus, a hypothetical monopolist of funeral services could profitably impose a small but significant and non-transitory increase in price ("SSNIP") because most consumers would not switch to cremation services.

13. There are no products or services that are reasonably interchangeable with or viable substitutes for funeral services.

### B.  Cemetery Services and Associated Products and Property

14. The provision and sale of cemetery services and associated products and property ("cemetery services") constitutes a relevant product market in which to analyze the competitive effects of the Merger. Cemetery services include all activities relating to promotion, marketing,

4

sale and provision of property, goods, and services to provide for the final disposition of human remains in a cemetery, whether by burial, entombment in a mausoleum or crypt, disposition in a niche, or scattering of cremated remains on the cemetery grounds.

15. There are no products or services that are reasonably interchangeable with or viable substitutes for cemetery services.

16. In some local markets, certain funeral and cemetery service locations cater to specific populations by focusing on the customs and rituals associated with one or more religious, ethnic, or cultural heritage groups. In such situations, the provision of funeral and cemetery services targeted to such populations may constitute distinct and relevant product markets.

## V. THE RELEVANT GEOGRAPHIC MARKETS

17. For purposes of this Complaint, the geographic markets in Plaintiff States in which to analyze the competitive effects of the Merger with respect to funeral services are:

   a. **Florida**: Clearwater; Jacksonville; Miami-Dade County (Homestead); Miami-Dade County (Miami); Ocala; Orlando; Port St. Lucie; and Tampa (Hispanic).

   b. **Maryland**: Washington, D.C./Maryland Suburbs (Jewish).

   c. **Missouri:** North Kansas City and South Kansas City.

   d. **North Carolina**: New Bern and Raleigh.

   e. **Tennessee**: Nashville.

   f. **Texas**: Dallas; and Southeast Fort Worth.

18. For purposes of this Complaint, the geographic markets in in Plaintiff States in which to analyze the effects of the Merger with respect to cemetery services are:

   a. **Florida**: Jacksonville; Miami-Dade; Ocala; West Orlando; Port St. Lucie; Springhill/Hudson; St. Petersburg/Largo and Tampa.

    b.    **Maryland**: Annapolis and Baltimore.

    c.    **Missouri:** North Kansas City and South Kansas City.

    d.    **North Carolina**: High Point and Raleigh.

    e.    **Pennsylvania**: Philadelphia.

    f.    **Tennessee**: Kingsport and Knoxville.

    g.    **Texas:** Dallas; South Dallas (African American); Southeast Fort Worth; and Houston.

### VI.  MARKET STRUCTURE AND MARKET CONCENTRATION

19.  Under the 2010 Department of Justice and Federal Trade Commission Merger Guidelines ("Merger Guidelines") and relevant case law, SCI's acquisition of Stewart is presumptively unlawful in the markets for funeral and cemetery services in a total of 37 geographic markets in the Plaintiff States.  Under the Merger Guidelines' standard measure of market concentration, the Herfinadahl-Hirschman Index ("HHI"), an acquisition is presumed to create or enhance market power or facilitate its exercise if it increases the HHI by more than 200 points and results in a post-acquisition HHI that exceeds 2,500 points.  The Merger creates market concentration levels well in excess of these thresholds.

#### A.  Funeral Services

20.  The Merger will significantly increase concentrations in numerous local markets for funeral services and will result in SCI controlling a substantial percent of the market in each of the following affected funeral services markets in the Plaintiff States:

    a.    **Florida**

        i.    <u>Clearwater, Florida</u>.  The Defendants are close competitors and differentiated from most other funeral homes in the market.  The remaining competitors are not nearly as close

substitutes for Defendants' funeral homes as the Defendants' funeral homes are for each other.

ii. <u>Jacksonville, Florida</u>. The market for funeral services in Jacksonville is highly concentrated. The Defendants are close competitors and are differentiated from most other funeral homes in the market. Defendants are close competitors while the remaining competitors are less competitively significant.

iii. <u>Miami-Dade County, Florida (Homestead).</u> In the Homestead area, south of Miami, the Merger will reduce the number of competitive funeral homes from two to one.

iv. <u>Miami-Dade County, Florida (Miami)</u>. The Defendants are close competitors and differentiated from most other funeral homes in the market. The remaining competitors are not nearly as close substitutes for Defendants' funeral homes as Defendants' funeral homes are for each other.

v. <u>Ocala, Florida</u>. The Merger will reduce from four to three the number funeral service providers in the relevant market.

vi. <u>Orlando, Florida</u>. The Defendants are close competitors and are differentiated from most other funeral homes in the market.

vi. <u>Port St. Lucie, Florida</u>. The remaining competitors are not nearly as close substitutes for Defendants' funeral homes as Defendants' funeral homes are for each other.

vii. <u>Tampa, Florida</u>. The Defendants are close competitors and differentiated from most other funeral homes in the market.

b. **Maryland**

i. <u>Washington D.C./Maryland Suburbs.</u> Post-Merger, SCI will have a market share of 68 percent of the market for Jewish funeral services. The Merger will increase the HHI by 2,038 points, from 3,625 to 5,662. The Merger will reduce from three to two the number of current providers of Jewish funeral services in the relevant market.

c. **Missouri:**

i. <u>North Kansas City, Missouri</u>. The market for funeral services in North Kansas City is highly concentrated. Post-Merger, SCI will have a market share of over 60%. The Defendants are close competitors and differentiated from most other funeral homes in the market. The remaining competitors will not constrain Defendants post-merger.

ii. <u>South Kansas City, Kansas/Missouri</u>. The market for funeral services in South Kansas City is highly concentrated. The Defendants are similarly positioned

7

competitors while the remaining competitors are more distant substitutes for Defendants' facilities.

    iii.    <u>Overland Park, Kansas</u>.  The market for funeral services in Overland Park is highly concentrated.  The Respondents are close competitors and are differentiated from most other funeral homes in the market.

**d.**    **North Carolina**

    i.    <u>New Bern, North Carolina</u>.  Post-Merger, SCI will have a market share of 100 percent.  The merger is a merger-to-monopoly, reducing the number of funeral services providers in the relevant market from two to one.  The only other funeral homes in the area do not compete closely with Defendants' homes because they cater to African American customers.

    ii.    <u>Raleigh, North Carolina</u>.  Post-Merger, SCI will have a market share of 51 percent. The Merger will increase the HHI by 667 points, from 2,924 to 3,591.

**e.**    **Tennessee**

    i.    <u>Nashville, Tennessee</u>.  Post-Merger, SCI will have a market share of 42 percent.  The Merger will increase the HHI by 499 points, from 1,785 to 2,284. The remaining local competitors are insufficient to constrain the merged firm and would not prevent competitive harm from resulting from the Merger.

**f.**    **Texas**

    i.    <u>Dallas, Texas</u>.  The market for funeral services in the Dallas area is highly concentrated.  Together the Defendants own 20 funeral homes in the market including the dominant funeral home with the largest call volume.  The Defendants are close competitors and differentiated from most other funeral homes in the market including on price.

    ii.    <u>Southeast Fort Worth, Texas</u>.  The market for funeral services in Southeast Fort Worth is highly concentrated.  The Merger will reduce from four to three the number of funeral services providers in the relevant market. The Defendants are close competitors offering large, well-maintained facilities serving a similar customer base, and are differentiated from most other funeral homes in the market.

8

### B.   Cemetery Services

21.   The Merger will significantly increase concentration in numerous local markets for cemetery services and will result in SCI controlling a substantial percent of the market in each of the following affected cemetery services markets in the Plaintiff States:

    a.   **Florida**

        i.   <u>Jacksonville, Florida</u>.  The market for cemetery services in Jacksonville is highly concentrated.  The Defendants are close competitors and are differentiated from most other cemeteries in the market.  The remaining competitors are not nearly as close substitutes for Defendants' cemeteries as Defendants' cemeteries are for each other.

        ii.   <u>Miami-Dade County</u>.  The Merger will reduce the number of competitive providers of cemetery services in the Miami area from five to four, with SCI owning six of the ten private perpetual care cemeteries in the area.  Post-Merger SCI will have a market share of 53%.  Defendants are close competitors, while the remaining competitors are not close substitutes for Defendants facilities.

        iii.   <u>Ocala, Florida</u>.  The market for cemetery services in Ocala is highly concentrated. Post-Merger, SCI will own two of the three competitively significant private perpetual care cemeteries in the market. Defendants are close competitors while the remaining competitors are not close substitutes for Defendants' facilities.

        iv.   <u>West Orlando, Florida</u>.  The market for cemetery services in the West Orlando area is highly concentrated.  The Defendants are close competitors and own a majority of the private cemeteries in the market.  The remaining competitors are not nearly as close substitutes for Defendants' cemeteries as Defendants' cemeteries are for each other.

        v.   <u>Port St. Lucie, Florida</u>.  The Merger will reduce the number of competitively significant providers of cemetery services in the Port St. Lucie area from four to three.  The Defendants are close competitors and are differentiated from most other cemeteries in the market.  The remaining competitors are not nearly as close substitutes for Defendants' cemeteries as Defendants' cemeteries are for each other.

        vi.   <u>Spring Hill/Hudson, Florida</u>.  The market for cemetery services in the Spring Hill/ Hudson area is highly concentrated.  The Merger reduces the number of competitively significant cemeteries form three to two.  The Defendants are close competitors and are differentiated from most other cemeteries in the market.

The remaining competitors are not nearly as close substitutes for Defendants' cemeteries as Defendants' cemeteries are for each other.

vii.   St. Petersburg/Largo, Florida. Post-Merger, SCI will own four of the five competitive private perpetual care cemeteries in the market. The Defendants are close competitors and are differentiated from most other cemeteries in the market. There is only one other meaningful, but differentiated, competitor in the area.

viii.   Tampa, Florida. The market for cemetery services in the central Tampa area is highly concentrated. The Defendants are close competitors and are differentiated from most other cemeteries in the market. The remaining competitors are not nearly as close substitutes for Defendants' cemeteries because third-party cemeteries are of lower quality and/or cater to specific ethnic groups.

b.   **Maryland**

i.   Annapolis, Maryland. Post-Merger, SCI will have a market share of 66 percent. The Merger will increase the HHI by 2,125 points, from 2,672 to 4,797. In addition, the Merger will reduce from four to three the number of cemetery services providers in the relevant market.

ii.   Baltimore, Maryland. Post-Merger, SCI will have a market share of 48 percent. The Merger will increase the HHI by 1,024 points, from 2,315 to 3,339. The remaining local competitors are insufficient to constrain the merged firms and would not prevent competitive harm from resulting from the Merger.

c.   **Missouri**

i.   North Kansas City, Missouri. Post-Merger, SCI will have a market share of 68 percent. The Merger will increase the HHI by 2,145 points, from 2,687 to 4,832.

ii.   South Kansas City, Kansas/Missouri. The market for cemetery services in South Kansas City is highly concentrated. The Defendants are close competitors, own the dominant, most prestigious cemeteries in the market, and are differentiated from most other cemeteries in the market.

d.   **North Carolina**

i.   High Point, North Carolina. Post-Merger, SCI will have a market share of 69 percent. The Merger will increase the HHI by 2,389 points, from 2,973 to 5,362. In addition, the Merger will reduce from four to three the number of cemetery services providers in the relevant market.

        ii.      <u>Raleigh, North Carolina</u>. Post-Merger, SCI will have a market share of over 70 percent. Defendants are close competitors in this market and the Merger will reduce the number of cemetery services providers in the relevant market from five to four.

**e.    Pennsylvania**

        i.      <u>Philadelphia, Pennsylvania</u>. The market for cemetery services in Philadelphia is highly concentrated. The Defendants own five of the largest most prominent cemeteries and they are close competitors. The remaining competitors include the various Catholic cemeteries that are not close substitutes for Defendants' cemeteries.

**f.    Tennessee**

        i.      <u>Kingsport, Tennessee</u>. Post-Merger, SCI will have a market share of 85 percent. The Merger will increase the HHI by 3,559 points, from 3,757 to 7,316. In addition, the Merger will reduce from four to three the number of cemetery services providers in the relevant market.

        ii.      <u>Knoxville, Tennessee</u>. The Merger will reduce the number of competitive providers of cemetery services from four to three. The Defendants are close competitors and differentiated from most other cemeteries in the market.

**g.    Texas**

        i.      <u>Dallas, Texas</u>. The market for cemetery services in Dallas is highly concentrated. The Defendants own 13 cemeteries in the market including the dominant cemetery with the most annual internments. The Defendants are close competitors while the remaining competitors are not as geographically close or competitively significant.

        ii.      <u>South Dallas, Texas</u>. Post-merger, SCI will have a market share above 90% for African-American cemetery services in South Dallas. No other cemetery in South Dallas is a close substitute for Defendants' cemeteries.

        iii.      <u>Southeast Fort Worth, Texas</u>. The market for cemetery services in Southeast Fort Worth is highly concentrated. The Merger will reduce from four to three the number of cemetery services providers in the relevant market. The Defendants are close competitors serving a similar customer base and offering higher quality cemeteries.

     iv.    Houston, Texas. The market for cemetery services in Houston is highly concentrated. The Defendants are close competitors and are differentiated from most other cemeteries in the market.

### VII. ANTICOMPETITIVE EFFECTS

22. The Merger may substantially lessen competition in the relevant markets by, among other things:

    a.    Eliminating actual, direct, and substantial competition between SCI and Stewart;

    b.    Increasing the likelihood that SCI will exercise market power unilaterally; and;

    c.    Increasing the likelihood of collusion or coordinated interaction between SCI and other funeral or cemetery service providers.

### VIII. ENTRY CONDITIONS

23. Entry into the relevant markets would not be timely, likely, or sufficient to prevent or defeat the likely anticompetitive effects of the Merger.

24. Among other entry barriers, heritage (the consumer's tendency to use the same funeral services provider for multiple generations) and reputation pose substantial barriers to entrants attempting to establish new funeral service locations.

25. The availability of suitable land and local zoning, health and environmental regulations impact significantly the ability of firms to enter with new cemetery service locations.

### IX. VIOLATIONS ALLEGED

**A.    First Cause of Action**

26. Plaintiff States repeat and reallege every preceding allegation as if fully set forth herein.

27. The Merger, if consummated, would tend to substantially lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

**B.      Second Cause of Action**

28. Plaintiff States repeat and reallege every preceding allegation as if fully set forth herein.

29. The Merger, if consummated, would violate or threaten to violate the prohibitions contained in the following state statutes:

   a. Florida: Florida Antitrust Act, Fla. Stat. § 542.28, *et seq.* and the Florida Deceptive and Unfair Trade Practice Act, Fla. Stat. § 501.201, *et seq.*

   b. Maryland: Maryland Antitrust Act, Md. Code Ann., Com. Law § 11-201, *et seq.*

   c. Missouri: Missouri Antitrust Act, Mo. Rev. Stat. §§ 416.011-416.161, and Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010-407.145.

   d. North Carolina: North Carolina Antitrust Act, N.C. Gen. Stat. §§ 75-1.1-2.1.

   e. Tennessee: Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101 *et seq.*

   f. Texas: Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code §15.01 *et seq.*

## X.      REQUESTED RELIEF

Accordingly, the Plaintiff States request this Court:

(A) Adjudicate that the acquisition by SCI of Stewart violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and the laws of the Plaintiff States as alleged above;

(B) Preliminarily and permanently enjoin SCI from carrying out the Merger, or from combining its own and Stewart's assets and operations in any other manner;

    (C)    Award Plaintiff States their reasonable costs and attorneys' fees; and

    (D)    Award such other further relief as the Court may deem just and proper.

Respectfully submitted,

**STATE OF TEXAS**
GREG ABBOTT
ATTORNEY GENERAL

DANIEL HODGE
First Assistant Attorney General
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
JOHN T. PRUD'HOMME
Chief, Consumer Protection Division
KIM VAN WINKLE
Section Chief, Antitrust Section
Consumer Protection Division
REBECCA FISHER
Senior Assistant Attorney General
Texas Bar No. 07057800
Rebecca.Fisher@texasattorneygeneral.gov

_/s/ David Ashton_
DAVID ASHTON
Assistant Attorney General
Texas Bar No. 24031828
P.O. Box 12548
Austin, Texas 78711-2548
Tel: 512-936-1781
David.Ashton@texasattorneygeneral.gov

**ATTORNEYS FOR THE STATE OF TEXAS**

    (C)    Award Plaintiff States their reasonable costs and attorneys' fees; and

    (D)    Award such other further relief as the Court may deem just and proper.

Respectfully submitted,

**STATE OF TEXAS**
GREG ABBOTT
ATTORNEY GENERAL

DANIEL HODGE
First Assistant Attorney General
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
JOHN T. PRUD'HOMME
Chief, Consumer Protection Division
KIM VAN WINKLE
Section Chief, Antitrust Section
Consumer Protection Division
REBECCA FISHER
Senior Assistant Attorney General
Texas Bar No. 07057800
Rebecca.Fisher@texasattorneygeneral.gov

_/s/ David Ashton_
DAVID ASHTON
Assistant Attorney General
Texas Bar No. 24031828
P.O. Box 12548
Austin, Texas 78711-2548
Tel: 512-936-1781
David.Ashton@texasattorneygeneral.gov

**ATTORNEYS FOR THE STATE OF TEXAS**

**STATE OF FLORIDA**
PAMELA JO BONDI
ATTORNEY GENERAL


*/s/ Lizabeth A. Brady*

PATRICA A CONNERS
Associate Deputy Attorney General
LIZABETH A. BRADY
Chief of Multistate Antitrust Enforcement
Office of the Attorney General of Florida
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3851
Liz.Brady@myfloridalegal.com

**ATTORNEYS FOR THE STATE OF FLORIDA**

**STATE OF MARYLAND**
DOUGLAS F. GANSLER
ATTORNEY GENERAL


_/s/ Ellen S. Cooper_
ELLEN S. COOPER
Chief, Antitrust Section
JOHN R. TENNIS
Deputy Chief, Antitrust Division
200 St. Paul Place, 19th Floor
Baltimore, MD 21202-2021
(410) 576-6470
jtennis@oag.state.md.us


**ATTORNEYS FOR THE STATE OF MARYLAND**

---

*Complaint in re: Plaintiff States v. Service Corporation International and Stewart Enterprises, Inc.*

**STATE OF MISSOURI**
CHRIS KOSTER
ATTORNEY GENERAL


*[signature: Anne E. Schmitt]*
ANNE SCHNEIDER
Assistant Attorney General/Antitrust Counsel
Office of the Attorney General
PO Box 899
Jefferson City, MO 65102
(573) 751-3376
Anne.Schneider@ago.mo.gov


**ATTORNEYS FOR THE STATE OF MISSOURI**

STATE OF NORTH CAROLINA
ROY COOPER
ATTORNEY GENERAL


_____
K.D. STURGIS
Special Deputy Attorney General
Office of the Attorney General
P.O. Box 629
Raleigh, NC 27602
(919) 716-6000
ksturgis@ncdoj.gov

ATTORNEYS FOR THE STATE OF NORTH CAROLINA

*Complaint in re: Plaintiff States v. Service Corporation International and Stewart Enterprises, Inc.*

**COMMONWEALTH OF PENNSYLVANIA**
KATHLEEN KANE
ATTORNEY GENERAL

TRACY W. WERTZ
Chief Deputy Attorney General


*[signature]*
NORMAN W. MARDEN
Deputy Attorney General
PA Office of the Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
nmarden@attorneygeneral.gov


ATTORNEYS FOR THE COMMONWEALTH OF PENNSYLVANIA

**STATE OF TENNESSEE**
ROBERT E. COOPER, JR.
Attorney General & Reporter of Tennessee


_____
VICTOR J. DOMEN, JR.
Senior Antitrust Counsel
Office of the Tennessee Attorney General
425 Fifth Avenue North
Nashville, TN  37202
(615) 253-3327
Vic.Domen@ag.tn.gov

**ATTORNEYS FOR THE STATE OF TENNESSEE**